# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

OFFIT KURMAN, P.A.
By:   Don P. Foster, Esquire
       dfoster@offitkurman.com
       Identification No: 25809
1801 Market Street, Suite 2300
Ten Penn Center
Philadelphia, PA 19103
(267) 338-1300 – Phone
(267) 338-1335 – Facsimile

| | |
|---|---|
| Michael H. Brothers<br>30 Atlantic Street<br>Niantic, CT 06357-3119<br>         *Plaintiff,*<br>v.<br>Kristin Werner<br>237 South 18th Street<br>Philadelphia, PA 19103<br><br>and<br><br>James Brown<br>138 Walnut Lane<br>Ambler, PA 19002<br>         *Defendants.* | No.: |

## COMPLAINT

NOW, comes the plaintiff, Michael H. Brothers ("Brothers") by and through his counsel, Offit Kurman, P.A., and Don P. Foster, Esquire, and in support of this Complaint does allege as follows:

### I. JURISDICTION AND VENUE

1.     This Court has jurisdiction over this action under 15 U.S.C. § 1121 (as an action arising under the Lanham Act); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1338(a) (any Act of Congress relating to trademarks); 28 U.S.C. § 1338(b) (action asserting a claim of unfair

competition joined with a related claim under the trademark laws); 28 U.S.C. § 1367 (supplemental jurisdiction); and 28 U.S.C. § 1332 (diversity of citizenship and amount in controversy over $75,000).

2. Venue is proper in this district under 28 U.S.C. § 1391 in that both defendants reside and do business in this district, and the wrongful conduct alleged hereafter occurred here.

## II. THE PARTIES

3. Brothers is an attorney licensed to practice law in Connecticut, the District of Columbia, and the Bar of the Patent and Trademark Office. Brothers resides at 30 Atlantic Street, Niantic, Connecticut 06357-3119.

4. Kristin Werner ("Werner") is an attorney licensed to practice law in the Commonwealth of Pennsylvania and New York. Werner resides at 237 South 18th Street, Philadelphia, PA 19103.

5. James Brown ("Brown") is an attorney licensed to practice law in the Commonwealth of Pennsylvania and New Jersey. Brown resides at 138 Walnut Lane, Ambler, PA 19002.

6. During the relevant time, Brothers, Werner and Brown were members of a Pennsylvania law partnership known as "Brown, Werner & Brothers, LLP" ("the partnership") with principal offices located at 237 S. 18th Street, Philadelphia, PA 19103-4196.

## III. FACTS

### A. The Creation And Dissolution of the Partnership

7. The partnership was constituted on or about February 1, 2009, pursuant to an oral agreement of partnership whereby the parties agreed that:

      a)      the partnership would be organized as a limited liability partnership under Pennsylvania law;

      b)      the relationship between the partners would be governed by the Pennsylvania Uniform Partnership Act;

      c)      each partner would own an equal 1/3 interest in the partnership;

      d)      best efforts would be made to equalize draws during each partnership year;

      e)      firm profits would be distributed equally;

      f)      costs advanced by any partner on account of partnership business would be reimbursed to that partner prior to distribution of profits, net of advances or draws.

8. Brothers worked primarily in an office in Connecticut. Brown and Werner worked in the partnership offices in Philadelphia. All partnership bank accounts were opened and controlled by Brown and Werner.

9. The partnership was dissolved by Brothers effective on August 1, 2011. From February 1, 2009 to August 1, 2011, the following contributions and withdrawals were made by each of the three partners:

| Year | Brothers Receipts | Brown Receipts | Werner Receipts | Brothers Draws | Brown Draws | Werner Draws |
|---|---|---|---|---|---|---|
| 2009 | $406,767.81 | $118,928.13 | $119,028.13 | $171,884.51 | $167,693.55 | $169,209.79 |
| 2010 | $566,756.38 | $447,928.81 | $447,928.81 | $396,862.50 | $385,862.50 | $384,346.26 |
| 2011 | $303,547.51 | $60,743.78 | $59,569.28 | $65,296.28 | $80,297.88 | $80,298.38 |
| Totals | $1,277,071.70 | $627,600.72 | $626,526.22 | $633,853.93 | $633,853.93 | $633,854.43 |

3

10. In 2010, Brothers' draw exceeded that of Brown and Werner due to an accounting error that resulted in a $15,000 payment to Brothers not having been recorded as a draw. This overdraw was corrected in 2011, which accounts for Brothers' lower draw in 2011 relative to those of Brown and Werner.

11. In and around May of 2011, as is set forth above in paragraph 7, it became apparent to Brothers that his contributions to the revenues of the partnership were disproportionate to the contributions by Brown and Werner. Accordingly, Brothers requested that Brown and Werner provide an accounting to him of the hours they were dedicating to the partnership, the disbursements they were advancing on behalf of firm clients and their accounts receivable. Brown and Werner agreed to provide the requested accounting, but failed, and continue to fail, to provide the information.

12. Despite the failure of Brown and Werner to provide him with an accounting of their activities, including hours worked, billed and collected, Brothers nevertheless provided Brown and Werner with a full accounting of his contributions to the operations of the partnership.

13. By July, 2011, due to the ongoing refusal of Brown and Werner to account for their contribution to the partnership, Brothers decided to dissolve the partnership immediately. By email dated July 21, 2011, Brothers agreed to delay dissolution of the partnership until August 1, 2011 to allow for an orderly windup of partnership business, including the necessary financial accounting among the partners. A true and correct copy of Brothers' email notice to this effect is attached as Exhibit "A".

14. On July 28, 2011, Brothers emailed Brown and Werner with the steps he suggested be taken to begin the accounting required as part of the dissolution of the partnership. A true and correct copy of this email is attached as Exhibit "B".

15. Also on July 28, 2011, Brothers sent Brown and Werner a proposed joint notification letter to be sent to firm clients on August 1. A true and correct copy of the email containing the proposed client letter is attached as Exhibit "C".

16. On or about July 29, 2011, Brown and Werner purported to reject Brothers' dissolution of the partnership, purported to forbid him to contact any firm clients, including clients for which Brothers was the billing attorney, and terminated Brothers' access to partnership bank accounts.

17. On August 1, 2011, Brothers notified firm clients of the dissolution of the partnership, with a copy to counsel to Brown and Werner. A true and correct copy of this notice is attached as Exhibit "D".

18. Also on August 1, 2011, Brothers provided Brown and Werner with as complete an accounting he was capable of at the time, given his inability to access partnership bank accounts. A true and correct copy of this email is attached as Exhibit "E". Later on the same day, Brothers further accounted for billings and receipts to and from one of his principal clients, Comstock. A true and correct copy of this email is attached as Exhibit "F".

19. On August 4, 2011, in his ongoing effort to wind up the affairs of the partnership, and to complete an accounting of partnership finances, Brothers sent an email to Brown and Werner setting forth his understanding of how reimbursed and unreimbursed expenses were to be accounted for between the partners. A true and correct copy of this email is attached as Exhibit "G".

20.     On August 5, 2011, counsel to Brown and Werner wrote counsel to Brothers and agreed to:

- investigate the effect of the dissolution on the partnership's insurance coverage;
- wind down the partnership's financial affairs by, *inter alia*, depositing into the firm's account any and all payments they received for services rendered prior to August 1, 2011 and paying for firm obligations;
- keep Brothers apprised of all activities related to the dissolution, including providing monthly statements of income and/or distributions.

A true and correct copy of this letter is attached as Exhibit "H".

21.     On August 8, 2011, Brothers once again accounted for deposits made by him into the partnership bank account. A true and correct copy of this email is attached as Exhibit "I". Despite demand, Brown and Werner continued to block Brothers' access to the partnership bank account and refused to account in return to Brothers for deposits, withdrawals, account balances, or partnership accounts receivable.

22.     Also on August 8, counsel to Brothers wrote Brown and Werner's counsel expressing his concerns about the refusal of Brown and Werner to provide Brothers with any information regarding the windup of the partnership, and their joint refusal to permit Brothers to participate in the windup, despite the fact that Brothers had contributed as much to the partnership as Brown and Werner had in combination. Notwithstanding this lack of cooperation, counsel, on Brothers' behalf, informed Brown and Werner that Brothers was depositing a client payment of $43,754.21 into the partnership account. A true and correct copy of this letter is attached as Exhibit "J".

23. On August 10, 2011, in his continuing effort to provide a full and complete financial accounting to his former partners, and to incent them to do the same in return, Brothers sent Brown and Werner an updated spreadsheet which accounted for the recent payment made to the partnership by a Brothers' client. A true and correct copy of this email is attached as Exhibit "K".

24. On August 19, 2011, counsel to Brown and Werner wrote Brothers' counsel seeking Brothers' cooperation with the financial dissolution of the partnership, and once again promising that Brown and Werner would on a regular basis provide Brothers with financial statements or balance sheets showing receipts and payments made by them as part of the winding up of the financial affairs of the partnership. A true and correct copy of this letter is attached as Exhibit "L". Despite these promises, Brown and Werner have never provided Brothers with the promised reports or the accounting to which he is entitled. By way of further allegation, Brothers disputes that Brown and Werner are entitled to control the financial dissolution of the firm and to deprive him of any information regarding the dissolution.

25. Counsel to Brothers responded to the August 19 letter from Brown and Werner's counsel by requesting once again prompt reporting of receipts and disbursements by Brown and Werner. A true and correct copy of counsel's email is attached as Exhibit "M". Despite their promises to provide such an accounting, as is required by their common law duty as a fiduciary, by their contract obligations under the partnership agreement, and by the Uniform Partnership Act, which was incorporated by reference into the oral understanding of the parties at the time the partnership was formed, Brown and Werner have never provided the information that was requested by Brothers and which is required by law.

26. On September 2, 2011, Brothers followed up directly with Brown and Werner's attorney with a complaint about the ongoing refusal of Brown and Werner to provide the financial information requested by him and to reimburse him for the documented and undisputed costs advanced by him on behalf of firm clients. Brothers also provided counsel with a copy of a communication to firm clients announcing the dissolution of the partnership and providing his new contact information. A true and correct copy of this email is attached as Exhibit "N".

27. On September 9, Brothers' counsel again wrote counsel to Brown and Werner to complain about the ongoing refusal to respond to Brothers' request for a financial accounting, among other open issues. A true and correct copy of this email is attached as Exhibit "O".

28. On September 28, 2011, Brothers' counsel again wrote counsel to Brown and Werner and reiterated Brothers' ongoing request for a financial accounting, as well as his request that some dialogues occur regarding other issues relevant to the windup of a law firm, including the purchase of liability insurance. A true and correct copy of this email is attached as Exhibit "P".

29. On October 1, 2011, Brothers emailed Brown and Werner's counsel with a report of a final deposit by him into the partnership bank account, and a repeated his ongoing request for reimbursement of documented out-of-pocket expenses advanced by him. A true and correct copy of this email is attached as Exhibit "Q".

30. Thereafter, on October 11, 2011, counsel to Brothers once again communicated to Brown and Werner's counsel Brothers' mounting frustration over Brown and Werner's failure to comply with the law and with their contractual and fiduciary obligations to him. Counsel repeated the open issues that remained between the parties. Specifically, counsel wrote:

> "1. Mike still has not received a release of his portion of the BWB retirement account. Mike requests that Jim and Kristin sign and return to Merrill

>   Lynch the letter that he originally sent to them on 8.21.2011. For convenience, that letter is attached to this email.
>
> 2. Mike requests payment for his out of pocket expenses in the total amount of $17,443.37, broken down as follows:
>
>    a)   $2,712.55 in disbursements associated with the 7/16/2011 to 7/31/2011 Comstock Invoice
>
>    b)   $14,692.33 in HST
>
>    c)   $38.49 in non-reimbursable BWB disbursements between 7/1/2001 and 7.31.2011.
>
> 3. Mike requests a copy of the Wouch and Maloney report which concluded that he had underpaid himself $451.
>
> 4. Mike requests some form of financial reporting as promised in your letter dated 8/5/2011, and
>
> 5. Mike requests an estimate as to when the winding-up process is expected to be completed."

Counsel suggested the following sequence of steps to resolve the open issues:

1. Complete the steps necessary to release Mike's portion of the BWB pooled retirement account.

2. Issue to Mike the Wouch and Maloney report referenced above.

3. Have each former partner determine the amount of non-paid reimbursable expenses which were properly incurred before 8/1/2011 and, once agreement is reached, have those funds issued to each former partner (Mike's total is $17,443.37 as described above and that number is not expected to change going forward).

4. Complete invoicing and receipt of funds necessary to deposit into the BWB account all revenue earned prior to 8/1/2011 (Mike has completed this step and all revenue earned by him which was under his direct control has been deposited into the BWB account and reflected on the 2011 and running ledgers that are attached to this email). The details of this step should be shown in the previously promised periodic financial reports referenced above.

5. Determine the amount of funds that the former partners jointly agree should be held in reserve in the BWB account.

> 6. Divide the remaining balance among the former partners and distribute those funds."

A true and correct copy of this email is attached as Exhibit "R".

31. On or about January 5, 2012, Brown and Werner provided Brothers with redacted bank statements and cancelled checks which purported to reflect disbursements by them from the partnership bank accounts.

32. The redacted bank statements provided by Brown and Werner do not reflect any deposits of client payments to them for legal services rendered prior to August 1, 2011. Upon information and belief, there have been such payments. From the information provided by Brown and Werner to date, Brothers is unable to determine if such deposits have been made. If they have not been made, then Brown and Werner have wrongfully diverted to themselves assets of the partnership that should be deposited into the partnership bank account.

33. Despite repeated demands, Brown and Werner have refused, and continue to refuse, to account to Brothers for:

> a) total fees paid to the partnership by partnership clients for legal services rendered prior to August 1, 2011;
>
> b) outstanding accounts receivable for legal services rendered prior to August 1, 2011;
>
> c) reimbursement of costs advanced by Brothers on behalf of firm clients in the amount of $17,443.20;
>
> d) deposits and debits to and from the partnership bank account.

**B. False Designation And Unfair Competition**

34. Since the dissolution of the partnership on August 1, 2011, Brown and Werner have purported to conduct business as a limited liability partnership known as "Brown Werner

LLP." True and correct copies of their individual attorney profiles from the website *www.brownwerner.com* are attached collectively as Exhibit "S".

35. However, a search of the records in the Pennsylvania Department of State show no record of a limited liability partnership known as "Brown Werner LLP" having been formed in Pennsylvania. Those same records show instead that there remains a still active limited liability general partnership known as "Brown Werner Brothers LLP". True and correct copies of the publicly available records of the Department of State supporting these allegations are attached collectively as Exhibit "T".

36. Upon information and belief, Brown and Werner continue to conduct business in Pennsylvania using the trade name "Brown Werner Brothers", and the registration of the "Brown Werner Brothers LLP" partnership with the Pennsylvania Department of State. The attorney profiles attached as Exhibit S identify each defendant as a partner in "Brown Werner & Brothers LLP," doing business at the same address as that registered with the Pennsylvania Department of State for the defunct partnership with the plaintiff.

37. The use of the plaintiff's name and the registered name "Brown Werner Brothers LLP" is likely to cause confusion in the marketplace and potential diversion of commercial opportunities for Brothers. An internet search on the Google search engine for "Brown Werner" yields but one "hit" on the first page for "Brown Werner LLP" and 9 hits for "Brown Werner Brothers" or "Michael Brothers". A true and correct hard copy of the results of this search is attached as Exhibit "U".

## CAUSES OF ACTION

**I.** **Trademark Infringement, Unfair Competition And False Designation Of Origin**

11

38. The allegations of paragraphs 1-37 above are incorporated by reference.

39. By their use of the name of the former partnership, and their use of the plaintiff's individual name on their website, and possibly elsewhere, Brown and Werner are falsely designating a service or representation of fact in violation of 15 U.S.C. § 1125(a)1(A) and/or (B). Their commercial use of Brothers' name and the name of the former partnership is likely to cause confusion or mistake, or deceive the public as to the affiliation, connection or association of Brothers with Brown, Werner or Brown Werner, LLP. Furthermore, the defendants' commercial advertising or promotion misrepresents the nature, characteristics, qualities or geographic origin of their services and commercial activities.

40. Brothers believes, and therefore avers, that he is likely to be damaged by the acts of Brown and Werner.

41. Brothers has been, and remains, irreparably harmed by Brown's and Werner's actions and, unless they are enjoined by this Court, will continue to suffer further harm to his name, reputation and goodwill. This harm constitutes an injury for which there is no adequate remedy at law. Brothers is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

42. The defendants' violation of 15 U.S.C. § 1125(a) entitles Brothers to recover any profits illicitly gained by them, legal damages suffered by Brothers, together with interest, costs and attorneys fees.

WHEREFORE, plaintiff prays that the Court enjoin the defendants from further commercial use of his name or the name of the former partnership, order an accounting of all fees earned by them since the dissolution of the partnership, including the identity of all clients and how those clients came to retain the defendants, and award trebled legal damages plus interests costs and attorneys fees.

## II. Unfair Competition Under Pennsylvania Law

43. The allegations of paragraphs 1-42 above are incorporated by reference.

44. The acts alleged above constitute an unfair method of competition and unfair or deceptive act or practice by the defendants in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§201-1--201-9.2 ("the Act").

WHEREFORE, plaintiff prays that the Court issue an injunction to restrain and prevent violations of the Act, direct defendants to restore to him three times the amount of all moneys or other property which may have been acquired by them by means of any violation of the Act, or not less than $100, plus interest, costs and attorneys fees.

## III. Invasion of Right To Privacy

45. The allegations of paragraphs 1-44 above are incorporated by reference.

46. Brown and Werner have used Brothers' name for commercial or advertising purposes without his written consent for the purpose of advertising or promoting products, merchandise, goods or services of a business in violation of 42 Pa.C.S. § 8316.

WHEREFORE, plaintiff prays that the Court issue an injunction to restrain and prevent the defendants' unauthorized use of his name, award damages for any loss or injury sustained by him as a result of such use, together with interest, costs and attorneys fees.

## IV.   Breach of Partnership Agreement

47. The allegations of paragraphs 1-46 above are incorporated by reference as though set forth in full.

48. Brown and Werner have breached the agreement of partnership between the parties by, *inter alia:*

a) failing to provide Brothers with an accounting of all receipts and disbursements by the partnership from August 1, 2011 to the present, save for incomplete and redacted bank statements provided on January 5, 2012 which do not show any deposits into the partnership account of receipts by Brown and Werner from partnership clients;

b) depriving Brothers of access to the partnership bank account(s);

c) possibly diverting partnership assets to themselves;

d) refusing to reimburse Brothers costs advanced by him of not less than $17,443.20;

e) failing to agree to distribute to the partners one-third (1/3) of profits net of expenses, including costs advanced by the partners;

f) refusing to provide Brothers with a copy of all client communications after August 1, 2011;

g) failing to take the steps necessary to windup a Pennsylvania law partnership.

WHEREFORE, plaintiff pray that judgment be entered in his favor and against defendants, jointly and severally, in an amount not less than $17,443.20 together with 1/3 of all partnership revenues net of appropriate partnership expenses, plus interest, costs and attorney fees.

## V. Accounting

49. The allegations set forth above in paragraphs 1-48 are incorporated by reference as through set forth in full.

50. Brown and Werner have received money, to which Brothers is entitled in part, the exact sum of which is unknown.

51. Brown and Werner are under a fiduciary obligation to Brothers to account to him for all partnership receipts and disbursements, and to pay him all funds to which he is entitled.

52. Brothers has demanded an accounting of all partnership receipts and disbursements from August 1, 2011 to the present, but Brown and Werner have failed and refused, and continue to fail and refuse, to render such accounting and to pay the monies to which Brothers is entitled.

WHEREFORE, plaintiff prays that judgment be entered in his favor and against defendants, jointly and severally, and that defendants be ordered to provide plaintiff with a full and complete accounting of all receipts and disbursements by or on account of the Partnership from August 1, 2011 to the present and to pay that amount found to be due the plaintiff as a result of said accounting, together with interest, costs and attorney fees.

## VI. Breach of Fiduciary Duty

53. The allegations of paragraphs 1-52 above are incorporated by reference as though set forth in full.

54. At all times relevant hereto, Brown and Werner have owed, and continue to owe, Brothers a fiduciary duty of utmost care, fidelity and faithfulness.

55. Brown and Werner have breached their fiduciary obligations to Brothers by, *inter alia*:

   a) unilaterally and illegally terminating his access to partnership bank accounts;

   b) possibly diverting partnership assets to themselves;

   c) failing to timely and accurately account for partnership receipts and disbursements;

d) refusing to reimburse Brothers for irrefutable and documented client costs advanced by him;

e) refusing to respond in a timely fashion to requests for information;

f) failing to cooperate in the orderly winding up of the partnership.

g) improperly withholding partnership information, including client communications;

h) refusing to agree to a distribution of partnership assets, net of liabilities, as provided for in the partnership agreement and the Uniform Partnership Act.

WHEREFORE, plaintiff prays that judgment be entered in his favor and against plaintiffs in an amount not less than the sum of his 1/3 interest in partnership assets, net of liabilities, plus reimbursement of $17,443.20 of costs advanced by Brothers, which Brothers estimates is not less than $75,000, plus interest, costs and attorney fees.

## VII. Injunction

56. The allegations of paragraph 1-55 above are incorporated by reference.

57. Due to their failure to provide him with an accounting of all receipts and disbursements, including the absence of any accounting of deposits made by them into the partnership bank account, Brothers believes, and therefore alleges, that Werner and Brown may dissipate and/or divert partnership assets, if they have not done so already.

58. Furthermore, as a fiduciary, Brothers is entitled to equitable relief in the form of an Order compelling Brown and Werner to comply with the partnership agreement and the Uniform Partnership Act.

59. Irreparable injury will result if an injunction is not granted.

60. Brothers has no adequate remedy at law.

61. Brothers is likely to prevail on the merits.

62. Greater harm will befall Brothers if an injunction is not granted than will befall Werner and Brown if an injunction is granted.

WHEREFORE, plaintiff prays that this Court enter judgment in his favor and against defendants and order that:

a) Defendants be ordered to provide an accounting of all partnership receipts and disbursements from August 1, 2011 to the present, including, but not limited to, copies of all checks, invoices, deposit slips and bank statements;

b) Defendants be ordered to deposit into the partnership bank account any funds received by them from a partnership client for services rendered prior to August 1, 2011; and

c) Defendants be enjoined from issuing any check drawn on any partnership account, or otherwise from depleting or diminishing in any way any asset of the partnership without prior notice to, and approval by, the plaintiff.

OFFIT KURMAN, P.A.

Date: February 14, 2012        By: _____
                                    Don P. Foster, Esquire
                                    Ten Penn Center
                                    1801 Market Street, Suite 2300
                                    Philadelphia, PA 19103

                                    *Attorneys for Plaintiff,*
                                    *Michael H. Brothers*